UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY BERKSHIRE,

                        Plaintiff,                 Civil Action No. 13-11599
                                                 Honorable Terrence G. Berg
v.                                        Magistrate Judge David R. Grand

ANN BAERWALDE, M. JENKINS,
A. SINGLETON, MATTHEW YOUNG,
and J. KLIMOWICZ,

                         Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND
## DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [14]

      Before the Court is the Motion for Summary Judgment filed on July 12, 2013 by Defendants Ann Baerwalde, Michael Jenkins, Alethia Singleton, Matthew Young, and John Klimowicz ("Defendants").  (Doc. #14).  *Pro se* Plaintiff Randy Berkshire ("Berkshire"), an incarcerated person, submitted a response to this motion on August 8, 2013.  (Doc. #19).  Defendants did not file a reply.  An Order of Reference was entered on May 7, 2013, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b).  (Doc. #6).

      Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* L.R. 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.      RECOMMENDATION

      For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [14] be **GRANTED**, except that, as to Berkshire's Eighth Amendment denial-of-medical-care claim against Defendant Klimowicz, **IT IS RECOMMENDED** that the motion be **DENIED WITHOUT PREJUDICE.**

## II.    REPORT

### A.    Background[1]

Berkshire is a State of Michigan prisoner who, at all times relevant to the complaint, was confined at the Macomb Correctional Facility in New Haven, Michigan.[2]   (Doc. #1 at ¶2). Berkshire brings this civil rights action pursuant to 42 U.S.C. §1983 against Defendants Ann Baerwalde, Michael Jenkins, Alethia Singleton, Matthew Young, and John Klimowicz, all of whom are (or were) employees of the Michigan Department of Corrections ("MDOC").   (*Id.* at ¶¶3-7; Doc. #14 at 5).

In his complaint, Berkshire asserts that, on August 31, 2011, he attempted suicide by cutting an artery in his right arm.   (Doc. #1 at ¶10).   According to Berkshire, he bled profusely and lost consciousness within minutes.   (*Id.* at ¶11).   Berkshire then regained consciousness while lying on his cell floor, allegedly surrounded by "pools of blood."   (*Id.* at ¶12).   According to Berkshire, Corrections Officer McCullough (who is not a party to the case) then approached his cell door with Defendant Jenkins (a Resident Unit Officer[3]), who communicated with Berkshire in an attempt to "prevent more self-injurious behavior(s)."   (*Id.* at ¶13).   Berkshire claims that Corrections Officer McCullough then used his foot to close the bottom door slot on

---

[1] For purposes of Defendants' motion, the Court takes as true all well-pleaded factual allegations in the complaint and construes all reasonable inferences from those allegations in Berkshire's favor.  *See Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011).  Moreover, complaints of *pro se* litigants are construed more liberally than those drafted by attorneys.  *See West v. Adecco Emp. Agency*, 124 F. App'x 991, 992 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Thus, the following facts are taken generally from Berkshire's complaint and the exhibits attached thereto unless otherwise indicated.

[2] The docket reflects that, currently, Berkshire is confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.

[3] As a Resident Unit Officer, Defendant Jenkins was assigned to a specific housing unit where he managed prisoners during activities, enforced departmental and facility rules, and performed administrative duties assigned to him by his supervisor.  (Doc. #14 at Ex. 2, ¶3).

Berkshire's cell door, "causing blood to splatter on the front of Defendant Jenkins' shirt, face, right eye, and top and sides of his head."  (*Id.* at ¶16).  Berkshire next asserts that Defendant Klimowicz (the Assistant Residential Unit Supervisor) ordered all staff to leave the area because Berkshire purportedly "assaulted staff" (by spraying blood on Defendant Jenkins) and left Berkshire "in his cell for approximately forty-five minutes bleeding profusely from an [sic] life-threatening injury."  (*Id.* at ¶17).  Berkshire further alleges that Defendant Klimowicz then ordered Defendant Jenkins to write a "falsified" misconduct ticket for assault and battery (based on the contact with Berkshire's blood).[4]  (*Id.* at ¶¶20-21).

Defendant Singleton (a Corrections Resident Representative) was assigned as the Hearing Investigator on Berkshire's misconduct ticket.  (*Id.* at ¶23; Doc. #14 at Ex. 4, ¶1).  As a Corrections Resident Representative, Defendant Singleton was responsible for assisting the Hearing Officer in collecting statements, documents, and other evidence necessary to adjudicate the misconduct report.  (Doc. #14 at Ex. 4, ¶3).  Berkshire claims that, after the events in question, he was placed in an observation cell and deprived of the opportunity to provide a

---

[4] Attached to Berkshire's complaint is a "sworn affidavit" of Defendant Jenkins, in which Jenkins purportedly asserts that he was struck with blood when Corrections Officer McCullough closed the bottom door slot of Berkshire's cell door, not through any fault of Berkshire.  (Doc. #1 at Ex. 1, ¶¶4-7).  Defendant Jenkins also purportedly affirms that, despite this fact, Defendant Klimowicz ordered him to issue Berkshire a misconduct ticket for assault and battery.  (*Id.*).  Attached to Defendants' Motion for Summary Judgment, however, is a second affidavit signed by Defendant Jenkins in which he denies having executed the affidavit submitted by Berkshire.  (Doc. #14 at Ex. 2, ¶4).  In support, attached to Jenkins' affidavit is the ***unsworn*** letter from the librarian whose notary stamp appears on the original Jenkins affidavit.  (*Id.* at Ex. 2, p. 4).  It is Defendants' position that the affidavit submitted by Berkshire is "a forgery and a complete fraud."  (Doc. #14 at 8).  Because the Court is recommending that summary judgment be granted on the claims stemming out of the issuance of this misconduct, it need not resolve this issue herein.  However, to the extent that these affidavits bear on Plaintiff's Eighth Amendment denial-of-medical-care claim, and to the extent Defendant Klimowicz later moves for summary judgment on this claim, the Court will then determine what steps, if any, should be taken to resolve the dispute surrounding these affidavits, including the imposition of sanctions if appropriate.  The Court would be aided in this task by the submission of evidence which it may properly consider.

written statement (he did, however, provide a verbal statement in which he denied assaulting Defendant Jenkins by streaming blood from his arm). (Doc. #1 at ¶23). Berkshire further alleges that Defendant Singleton falsely reported that he declined to provide a written statement. (*Id.* at ¶26).

A misconduct hearing was held on September 9, 2011. (*Id.* at ¶29). Berkshire alleges that Defendant Baerwalde, who was the Hearing Officer, acted outside the scope of her official capacity by withholding "material exculpatory evidence" (namely, a videotape of the incident in question). (*Id.* at ¶¶30-32). Berkshire further claims that he "attempted to compel the disclosure of the video tape," but Defendant Baerwalde refused to disclose its contents for security reasons. (*Id.* at ¶34). Berkshire was subsequently found guilty of assault and battery. (*Id.* at ¶35). He insists that Defendant Baerwalde's findings were "intentionally fabricated and completely inaccurate." (*Id.* at ¶40).

On October 3, 2011, Berkshire filed a request for rehearing "on the grounds of due process violation(s) and that Plaintiff was actually innocent of the charge that he was found guilty of." (*Id.* at ¶42). Berkshire asserts that Defendant Young, a Hearings Administrator, "intentionally and without rational basis" suppressed evidence of his innocence by failing to order a rehearing. (*Id.* at ¶44). Berkshire's request for rehearing was denied by Defendant Young on January 21, 2012. (*Id.* at ¶53).

### B. Berkshire's State Court Lawsuit

Berkshire's complaint fails to mention that after his request for rehearing was denied, he filed an administrative appeal in the Ingham County Circuit Court. (Doc. #14 at Ex. 1). Before that court, Berkshire argued (1) that his due process rights were violated when Defendant Baerwalde refused to hear any witnesses corroborating his version of the events and denied his

4

request to view the confidential videotape; and (2) that Defendant Baerwalde's findings were based entirely on fabricated evidence. (*Id.*). Circuit Court Judge Rosemarie Aquilina reviewed the videotape that Berkshire complained he was not allowed to see during the MDOC proceedings. (*Id.*). After reviewing the evidence, as well as the briefs submitted by the parties, Judge Aquilina denied Berkshire's appeal and upheld the decision of the Hearings Officer (Defendant Baerwalde). (*Id.*).

### C.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In

response to a summary judgment motion, the opposing party may not rest on its pleadings, nor
"'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but
must make an affirmative showing with proper evidence in order to defeat the motion."
*Alexander*, 576 F.3d at 558 (internal quotations omitted).

> **D.    Analysis**

In his complaint, Berkshire alleges both a due process (Fourteenth Amendment) violation
and an Eighth Amendment violation arising out of the disciplinary proceedings discussed above.
(Doc. #1 at ¶¶49-50).  In their motion, Defendants argue that summary judgment is appropriate
as to these claims for three reasons:  first, they should be dismissed under the so-called *Rooker-
Feldman* doctrine and/or the doctrines of collateral estoppel or *res judicata*; second, Berkshire's
claims against Defendant Baerwalde are barred by the doctrine of absolute judicial immunity;
and, third, Defendants are shielded by qualified immunity.    (Doc. #14).    Additionally,
Defendants state in their motion that, "Although the introduction to the complaint briefly refers
to a 45-minute delay in medical care, the Statement of Claim makes it clear that Plaintiff is only
asserting a claim pertaining to his misconduct ticket and hearing, and not a separate Eighth
Amendment denial-of-medical-care claim."    (*Id.* at 16).    Berkshire disputes this assertion,
claiming that he has, in fact, asserted that Defendant Klimowicz was deliberately indifferent to
his serious medical needs.  (Doc. #19 at 15).  These issues are discussed below.

> ***1.    Defendants' Motion for Summary Judgment on the
> Claims Arising Out of Berkshire's Misconduct Proceedings***

> *a.    Rooker-Feldman Does Not Bar Berkshire's Claims*

Defendants first argue that Berkshire's complaint is barred by the *Rooker-Feldman*
doctrine.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of
Appeals v. Feldman*, 460 U.S. 462 (1983).  *Rooker-Feldman* precludes "cases brought by state-

court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine only applies where a plaintiff complains of being injured by the challenged state court decision itself, for example, where a plaintiff "asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law." *McCormick v. Braverman*, 451 F.3d 382, 395 (6th Cir. 2006). The doctrine is not implicated "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Briscoe v. Jackson*, 285 F. App'x 205, 207 (6th Cir. 2008) (quoting *Exxon Mobil*, 544 U.S. at 293). When a "federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction." *Id.* (internal quotations omitted).

In order to determine whether Berkshire's claims are barred by the *Rooker-Feldman* doctrine, the Court must first look to "the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim" over which the district court may have jurisdiction. *McCormick*, 451 F.3d at 393; *see also Washington v. Wilmore,* 407 F.3d 274, 280 (4th Cir. 2005) (holding that *Rooker-Feldman* does not apply because "[plaintiff's] claim of injury rests not on the state court judgment itself, but rather on the alleged violation of his constitutional rights [by the defendant]").

It is clear from Berkshire's complaint that the source of his alleged injury is not the state court decision itself, but the alleged actions of Defendants in issuing him the assault and battery

7

misconduct charge, depriving him of the opportunity to present a written statement regarding the misconduct, finding him guilty of misconduct, and subsequently denying his request for rehearing.   (Doc. #1 at ¶¶20-21, 23, 30-35, 40, 44, 53).   Defendants argue that Berkshire "brought his claims in state court and lost" and "now wishes to have this Court effectively overturn the state-court order," which they claim is not permitted under *Rooker-Feldman*.   (Doc. #14 at 18).   But, the mere fact that Berkshire is a state-court loser, who filed his federal case after the conclusion of the state case, is not sufficient to trigger *Rooker-Feldman*.   Berkshire also must be specifically seeking review of the state court decision, which he is not.   *See Brown v. First Nationwide Mortgage Corp.*, 206 F. App'x 436, 439 (6th Cir. 2006) ("[A] complaint in which the plaintiff contends he was injured by the defendant[], rather than by the state court decision itself, is not barred by *Rooker-Feldman*, even if relief is predicated on denying the legal conclusion reached by the state court.").   In other words, the fact that a determination by this Court on the merits might result in a different outcome than the one reached by the state court is irrelevant in determining whether *Rooker-Feldman* applies:

> Appellate review – the type of judicial action barred by *Rooker-Feldman* – consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.   In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not *Rooker-Feldman*.

*Coles v. Granville*, 448 F.3d 853, 858-859 (6th Cir. 2006) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006)).   Because Berkshire "does not complain of an injury caused by a state court judgment, … he is asserting independent claims, which are not barred by *Rooker-*

*Feldman*," *Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007), and summary judgment is not appropriate on these grounds.

<blockquote>

b.   The Claims Arising out of Berkshire's Disciplinary
     Proceedings are Barred by Claim and Issue Preclusion
</blockquote>

Defendants also argue, in the alternative, that even if Berkshire's claims are not barred by *Rooker-Feldman*, "the Ingham County Circuit Court decision should have preclusive effect."[5] (Doc. #14 at 18).  Preclusion refers to the general principle that federal courts must give the same preclusive effect to a state-court judgment as that judgment would receive in the rendering state. *See* 28 U.S.C. §1738; *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007).   Michigan recognizes two forms of preclusion:  claim preclusion, or true *res judicata*, and issue preclusion, or collateral estoppel.  *See Abbott*, 474 F.3d at 330-31.  Even without having the benefit of the entire state court record, it is clear that Berkshire's claims are precluded by both doctrines.

<blockquote>

(1)   <u>*Res Judicata*</u>
</blockquote>

Michigan has adopted a broad application of the doctrine of *res judicata*, which bars not only claims actually litigated in the prior action, but all claims arising out of the same transaction that the parties, exercising reasonable diligence, could have raised in the prior action but did not. *See Limbach v. Oakland County Bd. of County Road Comm'rs*, 226 Mich. App. 389, 396 (1997). Application of the doctrine of *res judicata* requires that (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second

---

[5] In his response to Defendants' motion, Berkshire cites several cases, including *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), in support of his argument that the "state administrative agency's unreviewed factual determination" should not be given preclusive effect. (Doc. #19 at 5-15).  This argument misses the mark.  The Sixth Circuit has recognized that *Elliott* "addressed a state agency determination that had not been appealed to state court …." *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013).  The instant case, where Berkshire appealed Defendant Baerwalde's decision to the Ingham County Circuit Court (and, by his own admission, to the Michigan Court of Appeals), is very different.  (Doc. #19 at 9).  Thus, this Court is being asked to determine the preclusive effect of a Michigan state court decision, not the unreviewed decision of an administrative agency.

case was, or could have been, resolved in the first case. *See Adair v. State*, 470 Mich. 105, 121 (2004). "The test for determining whether two claims are identical for *res judicata* purposes is whether the same facts or evidence are essential to the maintenance of the two claims, not whether the grounds asserted for relief are the same." *Walters v. Cox*, 342 F. Supp. 2d 670, 676 (E.D. Mich. 2004) (internal quotations and citations omitted) (quoting *Huggett v. Dep't of Natural Resources*, 232 Mich. App. 188, 197 (1998)).

In this case, all three requirements are met for application of *res judicata* to the claims stemming from Berkshire's misconduct for assault and battery. The first condition is satisfied, as the state court decision denying Berkshire's administrative appeal was a final judgment on the merits. (Doc. #14 at Ex. 1, p. 5 (affirming the Hearing Officer's ruling and holding that the order "resolves the last pending claim and closes this case")).

Second, the MDOC and the named defendants – all of whom are MDOC employees (or were at the time of the events in question) – are in privity with one another, even though the named defendants in this case were not parties to the state court action. In this case, Berkshire sues the named defendants in both their personal and official capacities. (Doc. #1 at ¶¶3-7). Privity is easily determined when an individual employee of a governmental entity is sued in his official capacity. *See Crawford v. Chabot*, 202 F.R.D. 223, 227 (W.D. Mich. 1998) (citing Moore's Federal Practice 3d, §131.40[3][e][ii] ("[A] prior judgment involving the government will bar an action against individual officials of the government in their official capacity for the same claim.").

A more nuanced question is whether an employee sued in his individual capacity, as Berkshire purports to do, remains in privity with the governmental entity, since, "[i]f the plaintiff prevails against the official, the official must satisfy the judgment out of his own pocket ...."

*Fleming v. City of Detroit*, 2006 WL 2559862, at *6 (E.D. Mich. Sept. 1, 2006) (citing *Connor v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988)).  The Sixth Circuit has held that for privity to exist under Michigan law, "'a perfect identity of the parties is not required'; rather, the Michigan courts require 'a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation."  *McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir. 2010) (quoting *Adair*, 470 Mich. at 105).  In *McCoy*, the Sixth Circuit went on to hold that: "This test is met when the previous governmental-unit Defendant (here, the MDOC) and the present-case Defendants (here, the individual named Defendants) have an employer-employee relationship, regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claim in the second." *Id.*  Therefore, since all five of the named defendants were employees of the MDOC during the time in question, privity exists between them even if they are sued in their personal capacities.[6]

Lastly, the Court finds that the claims upon which Defendants move for summary judgment – namely, Berkshire's claims that he was denied due process in the misconduct proceedings and that the issuance of the misconduct ticket violated his Eighth Amendment right to be free from cruel and unusual punishment – were, or could have been, resolved in the first case.  The state court's decision specifically provides that Berkshire argued before that court that, "Due process was violated when the Hearings Officer refused to hear any witnesses corroborating [Berkshire] and when the Hearings Officer denied [Berkshire] the ability to view the confidential video recording …."  (Doc. #14 at Ex. 1, p. 3).  Berkshire advances the same

---

[6] Even if the named Defendants were determined not to be in privity with the MDOC, this fact would not defeat application of *res judicata*, as the Sixth Circuit – citing the Michigan Supreme Court – has held that privity is not required when the doctrine of claim preclusion is raised defensively, as it is here.  *See McCoy*, 369 F. App'x at 650 (citing *Monat v. State Farm Ins. Co.*, 469 Mich. 679 (2004)).

11

arguments before this Court.  (Doc. #1 at ¶¶49-50).  Likewise, Berkshire now asserts that Defendant Klimowicz's and Defendant Jenkins' "introduction of false evidence by filing a falsified misconduct … reflected an unnecessary and wanton infliction of pain upon Plaintiff proscribed by the Cruel and Unusual Punishments Clause of the Eighth Amendment."  (*Id.* at ¶49).  It is clear from a review of the state court's order that Berkshire raised the same argument before that court, namely that "the Hearings Officer's findings are based entirely upon fabricated evidence."  (Doc. #14 at Ex. 1, p. 3).  Accordingly, claim preclusion prevents Berkshire from re-litigating here his claims that Defendants violated his Fourteenth and Eighth Amendment rights in issuing him the misconduct for assault and battery.[7]

### (2)   Collateral Estoppel

The claims stemming from this misconduct also are barred under the doctrine of collateral estoppel, which "precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding." *Ditmore v. Michalik*, 244 Mich. App. 569, 577 (2001).  "Under Michigan law, issue preclusion applies when 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding."  *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 154 (1990)).

All four factors are satisfied here.  The first two factors are satisfied because, as stated

---

[7] Although Berkshire also argues that *res judicata* does not bar his §1983 claims because the Ingham County Circuit court "could not award damages," none of the cases he cites for this purported proposition applied Michigan law.  (Doc. #19 at 22).  Thus, they do not compel a different conclusion than that reached above.

above, the prior state-court case was decided on the merits and involved the same parties, or ones in privity to them. As to the third factor, the propriety of the misconduct issued to Berkshire – which would be essential to determining whether he is entitled to relief against the Defendants in this action – was actually litigated in the state court proceeding. (Doc. #14 at Ex. 1). Indeed, the state court specifically considered the same arguments that Berkshire raises here (for example, that he denied spraying blood on Defendant Jenkins, that his due process rights were violated when he was denied the opportunity to view the confidential videotape and present witnesses, and that the Hearings Officer's decision was "based entirely upon fabricated evidence"). (*Id.*). Berkshire claims that he "is not attempting to relitigate the identical issue of whether he is guilty of assault and battery, rather, he is arguing that the Defendant's [sic] engaged in wrong or bad faith conduct that was actively instrumental in causing the initiation of the disciplinary proceeding." (Doc. #19 at 10). This is a distinction without a difference, as Berkshire has argued – in both state and federal forums – that he did not assault Defendant Jenkins and he was falsely accused of this misconduct. And, finally, with respect to the fourth factor, Berkshire had a full and fair opportunity to litigate these issues: he appeared at the administrative hearing, was given the opportunity "to present his defense to the underlying charge," submitted a written statement denying the charges, and invoked his statutory rights to appeal Defendant Baerwalde's decision to the Ingham County Circuit Court (and, subsequently, the Michigan Court of Appeals). (Doc. #1 at ¶¶33-37; Doc. #14 at Ex. 1; Doc. #19 at 9). *See Peterson*, 714 F.3d at 914-15.

Because Berkshire's Fourteenth and Eighth Amendment claims arising out of the misconduct he was issued are barred under both the doctrines of claim preclusion and issue

13

preclusion, summary judgment is appropriate on these claims.[8]

### 2.    *Berkshire's Eighth Amendment Claim for Denial of Medical Care*

Klimowicz has not specifically argued that summary judgment is substantively warranted on Berkshire's purported Eighth Amendment claim for denial of medical care.  Indeed, with respect to this claim, Defendants' brief states only, "Although the introduction to the complaint briefly refers to a 45-minute delay in medical care, the Statement of Claim makes it clear that Plaintiff is only asserting a claim pertaining to his misconduct ticket and hearing, and not a separate Eighth Amendment denial-of-medical-care claim."  (Doc. #14 at 16).

Particularly considering the Court's obligation to liberally construe Berkshire's *pro se* complaint, *West*, 124 F. App'x at 992, the Court finds that he is attempting to plead a claim for alleged denial of medical care.  For example, in addition to his complaint's preamble statement that his "is a civil rights action [] for damages [] alleging … that a forty-five minute delay of medical treatment of [Berkshire's] life-threatening injury," the body of Berkshire's complaint also references Defendant Klimowicz's alleged forty-five minute delay in providing medical care – during which time Berkshire purportedly lay, "bleeding profusely from an [sic] life-threatening injury" on the floor of his cell.  (Doc. #1 at 1; ¶17).  Berkshire also asserts that Defendant Klimowicz's actions – in ordering all staff to leave the area while Berkshire was bleeding – were

---

[8] Because the Court finds that summary judgment is appropriate on preclusion grounds, it need not address Defendants' argument that these claims also are barred by the doctrine of qualified immunity.

In addition, Defendants argue that Berkshire's claims against Defendant Baerwalde are barred by the doctrine of absolute judicial immunity.  (Doc. #14 at 21 (citing *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988), and *Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007)).  While Defendants are correct that this doctrine bars claims against Defendant Baerwalde for monetary or injunctive relief, absolute judicial immunity does not necessarily bar claims for declaratory relief.  *See Cromer v. Braman*, 2008 WL 907468, at *4 (W.D. Mich. Mar. 31, 2008); *see also Cannon v. Bernstein*, 2010 WL 3842360, at *1 (E.D. Mich. July 14, 2010).  In this case, however, where the Court is recommending summary judgment in favor of Defendant Baerwalde (and others) on preclusion grounds, it need not resolve this issue.

intentional and done for the purpose of "deliberately delay[ing] and affect[ing] the necessary medical treatment to Plaintiff's sufficiently serious medical needs," which allegedly resulted in severe mental, emotional, and physical pain. (*Id.* at ¶¶18-19).

Not surprisingly, Klimowicz disputes Berkshire's version of the events. In Klimowicz's affidavit, he claims that the "housing unit log book" shows that: beginning at 1405 hours on August 31, 2011, Berkshire was cutting himself in his cell; by 1423 hours, Berkshire was being restrained by an MDOC employee and escorted to the housing unit B-wing shower; and that at 1438 hours, Berkshire was escorted to health care, where he was examined and returned to an observation cell by 1518 hours. (Doc. #14 at Ex. 3, ¶4). However, Defendants did not attach the "log book" to their summary judgment papers, and Berkshire avers a different timing of the events described by Klimowicz. (Doc. #19 at 35, ¶¶16-19). The Court cannot decide this factual dispute about the timing of the events on the present evidentiary record, as to do so would necessarily entail making a credibility finding. *See, e.g., Horner v. Klein*, 497 F. App'x 484, 491 (6th Cir. 2012) (court not permitted to make credibility determinations and factual findings on disputed issues at the summary judgment stage); *Copenhaver v. Mich. Dep't of Corr.*, 2007 WL 2406925, at *6 (E.D. Mich. Aug. 20, 2007) (same) (citing cases).

In addition to denying that Berkshire was left bleeding in his cell for forty-five minutes, Klimowicz claims that Berkshire's self-injurious behavior was not deemed serious enough by the facility medical staff to send him to an outside hospital, and that instead he was returned to the housing unit. (Doc. #14 at Ex. 3, ¶7). Again, however, Defendants did not attach the log book, medical records, or any other evidence which would support this contention about the severity of Berkshire's injury and/or the medical treatment he received. At this stage of the proceedings, where Klimowicz has not argued that summary judgment is warranted on Berkshire's claim for

15

denial of medical care, it would be inappropriate for the Court to attempt to resolve these issues on the record before it.  Viewing the allegations in the light most favorable to Berkshire, he has at least stated a claim that Defendant Klimowicz's actions – in delaying or denying him necessary medical treatment – violated his Eighth Amendment right to be free from deliberate indifference to his serious medical need.  *See, e.g., Estate of Carter v. City of Detroit*, 408 F.3d 304, 310, 312-13 (6th Cir. 2005) (holding that a defendant who knew the plaintiff was exhibiting "the classic symptoms of a heart attack" and did not arrange transportation to a hospital could be found deliberately indifferent).  Although the evidence might ultimately establish, perhaps even as a matter of law, that Klimowicz's actions were reasonable and did not violate Berkshire's Eighth Amendment rights, the Court simply cannot make that determination without reviewing relevant summary judgment evidence and evaluating any legal arguments that are advanced. Consequently, at least at this stage, Berkshire should be permitted to proceed on his Eighth Amendment denial-of-medical-care claim against Defendant Klimowicz.

## III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [14] be **GRANTED**, except that, as to Berkshire's Eighth Amendment denial-of-medical-care claim against Defendant Klimowicz, **IT IS RECOMMENDED** that the motion be **DENIED WITHOUT PREJUDICE.**[9]


Dated: December 24, 2013                       s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                               United States Magistrate Judge

---

[9] In light of the foregoing discussion and analysis, the Court recommends denial without prejudice such that Klimowicz may file an additional summary judgment motion as to the denial-of-medical-care claim and/or fraudulent affidavit issue discussed above should he be able to properly support such a motion.  *Cf.* E.D. Mich. LR 7.1(b)(2).

16

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 24, 2013.

s/ Lisa C. Bartlett for
FELICIA M. MOSES
Case Manager
