UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY BERKSHIRE,

                Plaintiff,            Civil Action No. 13-11599
                                              Honorable Terrence G. Berg
v.                                                Magistrate Judge David R. Grand

ANN BAERWALDE, M. JENKINS,
A. SINGLETON, MATTHEW YOUNG,
and J. KLIMOWICZ,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT KLIMOWICZ'S MOTION FOR SUMMARY JUDGMENT [50]**

Before the Court is the Motion for Summary Judgment filed on August 21, 2014, by John Klimowicz ("Klimowicz"), the sole remaining defendant in this case. (Doc. #50). *Pro se* Plaintiff Randy Berkshire ("Berkshire"), an incarcerated person, submitted a response to this motion on September 2, 2014. (Doc. #56). Klimowicz filed a reply brief in support of his motion on September 25, 2014. (Doc. #58). An Order of Reference was entered on May 7, 2013, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #6).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Klimowicz's Motion for Summary Judgment (**Doc. #50**) be **GRANTED.**

## II. REPORT

### A. Berkshire's Allegations

Berkshire is a State of Michigan prisoner who, at all times relevant to the complaint, was confined at the Macomb Correctional Facility in New Haven, Michigan.[1] (Doc. #1 at ¶2). Berkshire brought this civil rights action pursuant to 42 U.S.C. § 1983 against Klimowicz, as well as Ann Baerwalde, Michael Jenkins, Alethia Singleton, and Matthew Young, all of whom are (or were) employees of the Michigan Department of Corrections. (*Id.* at ¶¶3-7; Doc. #14 at 5). On December 24, 2013, this Court issued a Report and Recommendation recommending that summary judgment be granted in favor of Defendants Baerwalde, Jenkins, Singleton, and Young. (Doc. #20). That Report and Recommendation was adopted by the District Court on March 17, 2014. (Doc. #26). Consequently, Berkshire's sole remaining claim is an Eighth Amendment claim against Klimowicz for deliberate indifference to a serious medical need.

In his complaint, Berkshire asserts that, on August 31, 2011, he attempted suicide by cutting an artery in his right arm. (Doc. #1 at ¶10). He claims he bled profusely and lost consciousness within minutes. (*Id.* at ¶11). Berkshire further alleges that he then regained consciousness while lying on his cell floor, allegedly surrounded by "pools of blood." (*Id.* at ¶12). According to Berkshire, Corrections Officer McCullough then approached his cell door with Officer Jenkins, who communicated with Berkshire in an attempt to "prevent more self-injurious behavior(s)." (*Id.* at ¶13). Berkshire claims that Officer McCullough then used his foot to close the bottom door slot on Berkshire's cell door, "causing blood to splatter on the front of Defendant Jenkins' shirt, face, right eye, and top and sides of his head." (*Id.* at ¶16). Berkshire

---

[1] The docket reflects that, currently, Berkshire is confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.

2

next asserts that Klimowicz[2] ordered all staff to leave the area because Berkshire purportedly "assaulted staff" (by spraying blood on Jenkins) and left Berkshire "in his cell for approximately forty-five minutes bleeding profusely from an [sic] life-threatening injury." (*Id.* at ¶17). This alleged forty-five minute delay is the crux of Berkshire's deliberate indifference claim.

###    B.    Klimowicz's Motion for Summary Judgment

In a sworn affidavit attached to his motion for summary judgment, Klimowicz asserts that, as he was making rounds in the Residential Treatment Program ("RTP") housing unit[3] at approximately 2:00 p.m. on August 31, 2011, he observed blood on the floor next to cell #41, where Berkshire was locked up. (Doc. #50 at Ex. A, ¶5). According to Klimowicz, upon looking into Berkshire's cell, he observed Berkshire sitting on the bottom bunk, and he saw more blood on the floor of the cell. (*Id.*). Klimowicz affirms that he "immediately called for healthcare and for the Unit Sergeant via the radio" and that Officers McCullough and Jenkins appeared at Berkshire's cell. (*Id.*). Klimowicz then states that, a few cells down (in cell #44), there was another prisoner who was simultaneously engaging in disruptive behavior; apparently, he had "broken his fan and had the fan motor in a sock, while banging on the cell door and kicking the cell door, and making threats against staff." (*Id.*).

Because he had already called for healthcare for Berkshire, Klimowicz asserts that he responded to cell #44 in an attempt to defuse that situation. (*Id.* at ¶6). According to Klimowicz,

---

[2] At all relevant times, Klimowicz was an Assistant Residential Unit Supervisor ("ARUS") assigned to the Residential Treatment Program housing unit at the Macomb Correctional Facility. (Doc. #50 at Ex. A, ¶1). In his ARUS role, Klimowicz directly supervised corrections officers, maintained prisoner files, and enforced departmental and facility rules. (*Id.* at ¶3).

[3] The RTP housing unit houses offenders who have been diagnosed with some form of mental illness or disability and need a more therapeutic environment than what is offered in the prison's general population setting. (*Id.* at ¶4). According to Klimowicz, prisoners in the RTP unit frequently display self-injurious and/or suicidal behaviors, and at any given time, there could be one or more prisoners engaging in such acts. (*Id.*).

3

while he was at cell #44, he heard Officer McCullough state that Berkshire had thrown blood on Officer Jenkins, at which time he (Klimowicz) reported back to Berkshire's cell. (*Id.*). Soon after that, Sergeant Webster arrived at Berkshire's cell and, after some period of time, was able to convince Berkshire to allow himself to be placed in handcuffs. (*Id.*). Berkshire was then escorted to the unit showers without further incident until healthcare could arrive.[4] (*Id.*). While Berkshire was in the shower, RN Andrea Norman arrived and provided medical treatment to him. (Doc. #50 at Ex. B, pp. 3, 9, 12).

According to both Klimowicz's affidavit and relevant excerpts from the "unit log book," Berkshire was initially discovered bleeding in his cell at 2:05 p.m. (Doc. #50 at Ex. A, ¶7 and Ex. A-1, p. 5). Between this time and when Berkshire was ultimately escorted from the shower to healthcare (at 2:38 p.m.), thirty-three total minutes elapsed. (*Id.*). Klimowicz asserts that, "This was due in part to the fact that there was another disruptive prisoner in the unit and because Officer Jenkins had been hit with Plaintiff's blood and also needed medical attention." (Doc. #50 at Ex. A, ¶7). Moreover, between the time staff observed Berkshire's injury (at 2:05 p.m.) and escorted him to the shower for observation (at 2:23 p.m.) – where he received treatment from a registered nurse – only eighteen minutes elapsed. (*Id.* at Ex. A-1, p. 5; Ex. B, pp. 3, 7, 12). Berkshire received treatment in healthcare for a "small ½ in[ch] lac[eration]" to his arm, was returned to the housing unit at 2:58 p.m., and was subsequently placed on suicide watch. (*Id.* at Ex. A, ¶9; Doc. #51 at 6).

C.     **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[4] Apparently, Berkshire was taken first to the showers because he indicated that he had defecated himself. (Doc. #50 at Ex. B, p. 15; Doc. #56 at Ex. 1, ¶21).

4

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**D.    Analysis**

As set forth above, Berkshire alleges in his complaint that Klimowicz delayed forty-five minutes in providing him medical care – during which time he purportedly lay, "bleeding profusely from an [sic] life-threatening injury," on the floor of his cell. (Doc. #1 at ¶17). According to Berkshire, Klimowicz's deliberate indifference to his serious medical need constitutes a violation of the Eighth Amendment.

5

*1.    The Applicable Legal Standards*

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to inmates' serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. §1983." *Id.* (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)). Such a claim may be cognizable if "indifference is manifested by … prison guards in intentionally denying or delaying access to medical care" for a serious medical need. *Id.* (quoting *Estelle*, 429 U.S. at 104).

The Sixth Circuit recently explained that, to sustain a claim for deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective component. *See Broyles v. Correctional Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A "sufficiently serious" need must be more than a "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (quoting *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992)). Rather, it must pose "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The standard is met where a prisoner's medical condition is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 900 (internal quotations and citations omitted).

The subjective component requires a plaintiff to show "that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). "[S]omething more than mere negligence" is required, and liability

exists only if the official acts with a "sufficiently culpable state of mind" and "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834-37; *see also Flanory*, 604 F.3d at 254.

2. *The Objective Component – Seriousness of Berkshire's Medical Needs*

With respect to the objective prong of the Eighth Amendment analysis, Klimowicz argues that Berkshire has not demonstrated a "serious medical need" because he suffered only a half-inch laceration to his right arm. (Doc. #50 at 15-16). The Court disagrees.

As Berkshire points out, in the "Critical Incident Participant Report" that Klimowicz completed on August 31, 2011, he indicated that he "observed blood coming out of the bottom food slot of cell #41 and onto the wing floor." (*Id.* at Ex. B, p. 5). He further indicated that he "observed Berkshire sitting on the bottom bunk in cell #41 with additional blood on the cell floor in cell #41." (*Id.*). Indeed, the photographs attached to Berkshire's response to Klimowicz's motion show a substantial amount of blood, both inside and outside Berkshire's cell door. (Doc. #56 at Ex. 2). In his interrogatory responses, Klimowicz specifically indicated that, although he could not recall "how many pools of blood there were in the cell," it was clear to him that Berkshire "appeared to need medical attention." (*Id.* at Ex. 4, p. 2). And, Berkshire's medical records reveal that medical providers variously characterized his injury as "a significant cut" and a "severe[]" cut that resulted in "[s]ignificant blood loss." (Doc. #51). Taking these facts together, and considering them in the light most favorable to Berkshire, *see, e.g., Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011), he has established a genuine issue of material fact as to

7

whether he had a serious medical need.[5]

### 3. The Subjective Component – Klimowicz's Knowledge and Intent

With respect to the subjective prong of Berkshire's Eighth Amendment claim, the conclusion is different. As Berkshire succinctly states, "The overarching legal question is whether defendant Klimowicz was deliberately indifferent in delaying plaintiff's access to medical treatment." (Doc. #56 at 6). Berkshire asserts that he and Klimowicz simply tell different versions of the events: according to him, Klimowicz "waited forty-five minutes to obtain medical care for him, while he purportedly lay 'bleeding profusely from a life-threatening injury' on the floor of his cell"; according to Klimowicz, however, Berkshire "was provided with prompt medical care." (*Id.* at 6-7 (internal citations omitted)). Berkshire asserts that, because "the parties' respective versions of the events diverge factually," summary judgment is inappropriate. (*Id.* at 7). The Court disagrees.

This is not simply a "he-said/he-said" case, in which Berkshire alleges one thing and Klimowicz says another; rather, this is a case in which Berkshire *alleges* one thing, and all of the *evidence* points to the contrary. At the heart of Berkshire's complaint is his allegation that Klimowicz "waited forty-five minutes to obtain medical care for him" while he lay bleeding on the floor of his cell. (*Id.* at 6-7). Not only has Klimowicz submitted a sworn affidavit denying

---

[5] Klimowicz also argues that Berkshire cannot satisfy the objective prong of the Eighth Amendment analysis because, "A prisoner alleging deliberate indifference resulting from refusal to contact healthcare which essentially resulted in a delay in medical treatment … must put verifying medical evidence into the record to establish the detrimental effect of the delay." (Doc. #50 at 15 (citing *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)). However, the Sixth Circuit has clarified that its ruling in *Napier* does not apply "where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 899-900. As noted above, the Court finds that Berkshire has adequately alleged and shown such an injury. Accordingly, he was not required to present evidence showing that his condition worsened due to a delay in receiving medical care. *Id.*

this allegation, but he has affirmatively accounted for the actions he took – and the timing of those actions – and provided documentary evidence supporting his account.

Specifically, Klimowicz asserts that, at approximately 2:00 p.m.[6] on August 31, 2011, he observed blood on the floor next to Berkshire's cell. (Doc. #50 at Ex. A, ¶5). According to Klimowicz, he then observed Berkshire sitting on the bottom bunk, and he saw more blood on the floor inside the cell. (*Id.*). Klimowicz states that he "immediately called for healthcare and for the Unit Sergeant via the radio" and that Officers McCullough and Jenkins appeared at Berkshire's cell. (*Id.*). Klimowicz's account is supported by the unit log book, which indicates that, by 2:05 p.m., such a call had been made. (Doc. #50 at Ex. A-1, p. 5). Moreover, the Critical Incident Participant Reports prepared by all of the other individuals involved in the situation corroborate Klimowicz's version of events. (*Id.* at Ex. B). By 2:23 p.m., after Berkshire had been convinced to be placed in handcuffs (which took some time), he had been escorted to the unit showers, where he was treated by Nurse Norman. (*Id.*; *see also* Doc. #50 at Ex. B, pp. 3, 7, 9, 12). Fifteen minutes later, at 2:38 p.m., Berkshire was in healthcare receiving treatment for a "small ½ in[ch] lac[eration]" to his arm. (*Id.* at Ex. A, ¶9, Ex. A-1, p. 5; Doc. #51

---

[6] Berkshire attaches to his response brief an affidavit of Jerrid Risk ("Risk"), who apparently was an inmate at the Macomb Correctional Facility at the time of the events at issue. (Doc. #56 at Ex. 5). In his affidavit, Risk states that, at approximately 1:50 p.m., he informed Klimowicz that Berkshire "may have attempted suicide by cutting and asked that someone go up to his cell and check on him." (*Id.* at ¶7). According to Risk, "Klimowicz said something to the effect of 'I'm tired of these mother fuckers cutting on themselves and bugging out!" and did not actually check on Berkshire until 2:05 p.m., some fifteen minutes later. (*Id.* at ¶¶8, 12). Even taking Risk's allegations as true, however, he informed Klimowicz only that Berkshire "<u>may have</u>" attempted suicide, not that he had in fact done so or was already "bleeding profusely." (*Id.* at ¶7). Moreover, by Risk's own admission, his conversation with Klimowicz occurred outside the building where Berkshire was housed, at the shift-change (*Id.* at ¶7); thus, the fact that it may have taken fifteen minutes to arrive at Berkshire's cell to check on him, *see supra* at 4, does not indicate that Klimowicz <u>knew of and disregarded</u> an excessive risk to Berkshire's health or safety, as required to state a deliberate indifference claim under the Eighth Amendment. *See Farmer*, 511 U.S. at 834-37.

at 6).

From a strictly factual perspective, then, Berkshire's allegation that Klimowicz "waited forty-five minutes" to obtain medical care for him is belied by the record evidence, which establishes that such care was provided – at a maximum – within thirty-three minutes of when Klimowicz discovered the injury. In the face of the substantial documentary and other evidence submitted by Klimowicz, Berkshire cannot rely only on his own self-serving allegations to survive summary judgment. *See, e.g., Granger v. Klein*, 197 F. Supp. 2d 851, 873 (E.D. Mich. 2002) (citing cases).

Moreover, the uncontroverted evidence establishes that, at virtually the same time Klimowicz noticed and began to address Berkshire's injury, a prisoner in a nearby cell engaged in disruptive behavior – breaking his fan, placing the fan motor in a sock, banging on the cell door with this contraption, and threatening staff. (Doc. #50 at Ex. A, ¶5). Berkshire does not dispute these facts. And, Klimowicz states under oath that because he had already called for healthcare for Berkshire and additional staff had arrived on the scene – facts that are borne out by the unit log book – he attempted to defuse the competing situation and allow his fellow officers to attend to Berkshire. (*Id.* at ¶6).

Given the circumstances, where Klimowicz called for healthcare immediately upon discovering Berkshire's injury, was attempting simultaneously to deal with a belligerent and threatening prisoner in an adjacent cell, and where Berkshire suffered only a half-inch laceration, he cannot show that Klimowicz knew of an excessive risk to Berkshire's health and intentionally disregarded that risk. Indeed, under the circumstances, the medical treatment Berkshire did receive – both in the showers and, subsequently, in healthcare – was relatively prompt and did not result in additional, significant harm. Thus, any delay that occurred was constitutionally

10

negligible. *See, e.g., Laster v. Mancini*, 2013 WL 5405468, at *22 (S.D.N.Y. Sept. 25, 2013) (noting that many courts have found no Eighth Amendment violation with delays of one day or less); *Parker v. Mulderig*, 1993 WL 44275, at *6 (E.D. Pa. Feb. 17, 1993) (twenty-minute delay in medical treatment for head wound requiring stitches was not evidence of deliberate indifference); *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1113 (N.D. Tex. 2001) (ninety minute delay in providing medical treatment does not amount to deliberate indifference).

Consequently, no genuine issue of material fact exists as to whether Klimowicz acted with a "sufficiently culpable state of mind" in deliberately delaying Berkshire's medical care, and summary judgment is appropriate on Berkshire's sole remaining Eighth Amendment claim. *Farmer*, 511 U.S. at 834-37.[7]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Klimowicz's Motion for Summary Judgment (**Doc. #50**) be **GRANTED**.

Dated: December 12, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

---

[7] Because the Court finds that summary judgment is appropriate on the merits of Berkshire's deliberate indifference claim, it need not address Klimowicz's argument that this claim also is barred (or partially barred) by the doctrines of qualified and/or Eleventh Amendment immunity.

F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 12, 2014.

    s/Eddrey O. Butts
    EDDREY O. BUTTS
    Case Manager